## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHANIE SCHAER, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>NEWELL BRANDS INC. and SUNBEAM PRODUCTS, INC.,<br><br>             Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephanie Schaer ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Newell Brands Inc. and Sunbeam Products, Inc. ("Defendants") for the manufacture, marketing, and sale of consumer products sold under the Sunbeam, Crockpot, Oyster, and Mr. Coffee brand names (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action against Defendants for the marketing, manufacture and/or sale of consumer products (the "Products"), which contain warranty statements that condition the continued validity of a warranty on the use of only an authorized repair service (a "tying arrangement"). Tying arrangements that condition a consumer product's warranty on the use of a specific repair service, in this manner, violates state and federal law. Further, Defendants exacerbate these violations by stating on the outside of the product packaging that the Products include a one-year limited warranty, but the unlawful repair restriction is not revealed to the consumer until after the point of sale. Thus, a reasonable consumer would rely on the warranty

mentioned on the outside of the packaging.  As such, had Plaintiff – or reasonable class members – been aware of the unlawful repair restriction, they would not have purchased the Product, or would have paid significantly less for it.

2.      Plaintiff brings her claims against Defendants individually and on behalf of a class of all other similarly situated purchasers of the Products for: (i) violations of the Magnuson-Moss Warranty Act, (ii) unjust enrichment, (iii) fraud, and (iv) fraudulent omission.

## PARTIES

3.      Plaintiff Stephanie Schaer is, and at all times relevant to this action has been, a resident of Chicopee, Massachusetts and a citizen of Massachusetts.  In or about May 2021, Ms. Schaer purchased one Mr. Coffee 12-Cup Programmable Coffee Maker from a Walmart store located at 591 Memorial Dr, Chicopee, MA 01020.  Ms. Schaer purchased the Product, reasonably believing its warranty complied with state and federal law and believing that she would have the ability to repair the product if it malfunctioned.  However, the Product Ms. Schaer purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty which prohibited her from repairing the Product.  Ms. Schaer would not have purchased the Product, or would have paid significantly less for the Product, had she known that the Product did not comply with state and federal law.  The unlawful repair restriction attached to her warranty was only revealed to her after purchasing the product and opening the packaging at home.

4.      The Product that Ms. Schaer purchased began to slightly malfunction shortly after she purchased it.  She would like to endeavor to repair her product herself, but her warranty as currently written prohibits her from doing so.

5.      Ms. Schaer reviewed the Product's packaging prior to purchase.  Ms. Schaer relied on the packaging in making her purchase decision.  Defendants disclosed on the packaging that the Product included a one-year limited warranty but did not disclose that the warranty included an unlawful repair restriction.  Had there been a disclosure, Ms. Schaer would not have purchased the Product because the unlawful repair restriction would have been material to her, or at the very least, she would have purchased the Product at a substantially reduced price.

6.      Defendant Newell Brands Inc. is a Delaware corporation with its principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328.  Defendant Newell Brands Inc. markets and distributes the Products throughout the United States.  Defendant Newell Brands Inc. sells its products to consumers on websites and retail stores nationwide.

7.      Defendant Sunbeam Products, Inc. is a Delaware corporation with its principal place of business at 2381 Executive Center Drive, Boca Raton, Florida 33431.  Defendant Sunbeam Products, Inc. markets and distributes the Products throughout the United States. Defendant Sunbeam Products, Inc. sells its products to consumers on websites and retail stores nationwide.  Defendant Sunbeam Products, Inc. is a wholly owned subsidiary of Defendant Newell Brands Inc.

8.      Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in

controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

10.     This Court has personal jurisdiction over both Defendants because Defendants conduct substantial business within this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased her Product and suffered her resulting injury in this District.

## COMMON FACTUAL ALLEGATIONS

### I.     Defendants' Business Activities

12.     Defendants distribute electric home appliances throughout the United States to retailers throughout the United States, who then sell the appliances to consumers.

13.     Defendants' products and brands include Sunbeam, Crockpot, Oster, and Mr. Coffee, among others.

14.     All of these products include the same unlawful repair restriction in their warranties.

15.     Defendants have advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

16.     Defendants' Products include a "written warranty" as defined by the Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

17.     The length of the limited warranty offered by Defendants is one year.

18.     Defendants' limited warranty includes the aforementioned unlawful repair restriction.

## II.      The Defendants Condition Warranty Coverage On Unlawful Repair Restrictions

19.      In numerous instances, Defendants, through their warranty statements for various appliances, condition warranty coverage on the usage of Defendants' repair services to perform maintenance and repair work, rather than allowing consumers to repair the product themselves or take it to a third-party repair service.

20.      Specifically, Defendants' warranty states "Sunbeam Products, Inc, at its option, will repair or replace this product or any component of the product found to be defective during the warranty period … Do NOT attempt to repair or adjust any electrical or mechanical functions on this product.  Doing so will void this warranty."[1]

21.      By conditioning their warranty in this manner, Defendants have violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on the consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

22.      Defendants' practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

---

[1] https://www.mrcoffee.com/on/demandware.store/Sites-mrcoffee-Site/default/Support-Show?cfid=warranty-faq;
https://s7d9.scene7.com/is/content/NewellRubbermaid/DASH/S7_int/2020/2_3-5Qt_Manual_Slow%20_Cookers_IB.pdf, pg 1;
https://s7d9.scene7.com/is/content/NewellRubbermaid/DASH/S7_int/2020/005965-000-000_43_32757971.PDF, pg 9.

**III.    The Magnuson-Moss Warranty Act**

23.    The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes.  It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

24.    Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

25.    An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Defendants' warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)).  For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty.  These provisions violate the Act in two ways.  First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c)

## IV.    Section 5 Of The Federal Trade Commission Act

26.    The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[2]

27.    15 U.S.C. § 45. Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.  *See*, *e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

28.    The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs.  In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[3]

---

[2] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

[3] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

29.     The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action.

30.     The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[4]

31.     The FTC has also expressed concern that repair restrictions "may place a greater financial burden on communities of color and lower-income Americans."[5]

32.     While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[6]

33.     Here there is no justification for Defendants' repair restrictions since the technology inside many of Defendants' Products (such as their drip coffee machines) are well known and simple, and the repair restriction is not relevant as any consideration of personal injury or improper repairs.[7]

---

[4] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.

[5] Id. at 5.

[6] Id. at 10.

[7] See https://www.lasko.com/resources/warranties/, "This warranty does not apply if the product was damaged or failed because of accident, improper handling or operation, shipping damage, abuse, misuse, unauthorized repairs made or attempted."

34.     Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against repair restrictions that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[8]

## CLASS REPRESENTATION ALLEGATIONS

35.     Plaintiff seeks to represent a class defined as all purchasers of Sunbeam, Crockpot, Oyster, or Mr. Coffee products in the United States with a warranty provision that prohibits self-repair (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

36.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the relevant products in the state of Massachusetts with a warranty provision that prohibits self-repair (the "Massachusetts Subclass") (collectively with the Class, the "Classes").

37.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

38.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Massachusetts Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the millions.  Given the size of the Defendants' operation and the number of retail stores in the United States selling Defendants' Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

---

[8] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

39.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

(a)    Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

(b)    whether Defendants' conduct was unfair and/or deceptive;

(c)    whether Defendants have been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Classes;

(d)    whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

(e)    whether Defendants' conduct violates the Magnuson-Moss Warranty Act; and

(f)    whether Defendants' conduct violates section 5 of the Federal Trade Commission Act.

40.     Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendants' Products, and Plaintiff sustained damages on account of Defendants' wrongful conduct.

41.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Classes.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

43.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

44.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

45.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

46.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

47.     Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

48.     Defendants are suppliers and warrantors as defined by the Warranty Act because they are suppliers or other persons who give or offer to give a written warranty or who are or may be obligated under an implied warranty.  15 U.S.C. § 2301(4) and (5).

49.     No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or

unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C.

2302(c)). 16 CFR § 700.10(c).

50.     In connection with the marketing and sale of the Product, Defendants have

conditioned a warranty on the consumer's using, in connection with the warranted Product, with

the use of only an authorized repair service. 16 CFR § 700.10(c).

51.     Specifically, Defendants state "Sunbeam Products, Inc, at its option, will repair or

replace this product or any component of the product found to be defective during the warranty

period ….  Do NOT attempt to repair or adjust any electrical or mechanical functions on this

product.  Doing so will void this warranty."

52.     By reason of Defendants' breach of warranties, Defendants violated the statutory

rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss

Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass

Members.

53.     Plaintiff and the Class and Subclass Members were injured as a direct and

proximate result of Defendants' breach because they would not have purchased the Products if

they knew the truth about the deceptive nature of the Products or would have paid substantially

less for them.

## COUNT II
## Unjust Enrichment

54.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

above.

55.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Classes against Defendants.

56.     Plaintiff and members of the Classes conferred benefits on Defendants by purchasing the Product.

57.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the Products contained an unlawful repair restriction until after the point of sale.  These omissions caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the product.

58.     Retention of those moneys also is unjust and inequitable because, as alleged above, Defendants include an unlawful repair restriction on their Products that is not disclosed until after the point of sale.

59.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

60.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

61.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

62.     As discussed above, Defendants provided Plaintiff and members of the Classes with false or misleading material information about the Products.

63.     Specifically, Defendants indicated to Plaintiff and members of the Classes that they would be unable repair the products that they had just purchased.  Defendants added this provision knowingly in order to encourage Plaintiff and members of the Classes to purchase new Products rather than repair older Products.

64.     Defendants misrepresented that these unlawful repair restrictions were binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

65.     Defendants exacerbated these misrepresentations because the unlawful repair restrictions were not revealed to Plaintiff and members of the classes under after the point of sale.

66.     These misrepresentations were made with knowledge of their falsehood.

67.     The misrepresentations made by Defendants, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would have or at least pay substantially more for the product than they would have.

68.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
**Fraudulent Omission**

69.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

71.     This claim is based on fraudulent omissions concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties.  As discussed above, Defendants failed to disclose that the Products included a restriction that ostensibly prevented Plaintiffs and members of the class from repairing their products themselves until after the point of sale.

72.     The false and misleading omissions were made with knowledge of their falsehood.  Defendants manufacture, market, and sell consumer electronics nationwide and know that the FTC has stated that repair restrictions of the type that appears on Defendants' warranty are unlawful.  Nonetheless, Defendants continued to include their unlawful repair restrictions on their Products and continue to fail to reveal such restrictions to consumers until after the point of sale.

73.      The false and misleading omissions were made by Defendants, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would have or at least pay substantially more for the Products than they otherwise would have.

74.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

        (a)   For an order certifying the nationwide Class and Massachusetts Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Massachusetts

Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Massachusetts Subclass Members;

(b)    For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff, the nationwide Class, and the Massachusetts Subclass on all counts asserted herein;

(d)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    For an order awarding Plaintiff, the Class, and Massachusetts Subclass their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated:  January 7, 2022                          Respectfully submitted,

**REARDON SCANLON LLP**

By: */s/ James J. Reardon, Jr.*
      James J. Reardon, Jr.

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

16

**BURSOR & FISHER, P.A.**
Julian C. Diamond (*Pro Hac Vice forthcoming*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7011
Facsimile:  (212) 989-9163
Email: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal Deckant (*Pro Hac Vice forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorneys for Plaintiff*