## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHANIE SCHAER, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>NEWELL BRANDS INC. and SUNBEAM PRODUCTS, INC.,<br><br>     Defendants. | Case No.  3:22-CV-30004-MGM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Stephanie Schaer ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Newell Brands Inc. and Sunbeam Products, Inc. ("Defendants") for the manufacture, marketing, and sale of consumer products sold under the Sunbeam, Crockpot, Oster, and Mr. Coffee brand names (the "Products").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

### <u>NATURE OF ACTION</u>

1. This is a class action against Defendants for the marketing, manufacture and/or sale of consumer products (the "Products"), which include warranty statements that condition the continued validity of a warranty on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction").  Tying arrangements that condition a consumer product's warranty on the use of a specific repair service or the use of authorized parts, in this manner, violates state and federal law.  Further, Defendants exacerbate these violations by stating on the outside of the product packaging that the Products include a limited warranty, but the tying arrangement is not reasonably revealed to the consumer until after

the point of sale.  Had Plaintiff – or reasonable class members – been aware of the unlawful

repair restriction, she would not have purchased the Product, or would have paid significantly

less for it.

2.      Plaintiff brings her claims against Defendants individually and on behalf of a

class of all other similarly situated purchasers of the Products for: (i) violations of the

Magnuson-Moss Warranty Act, (ii) unjust enrichment, (iii) fraud, (iv) fraudulent omission, and

(v) violations of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen.

Laws Ch. 93A *et. seq*.

## PARTIES

3.      Plaintiff Stephanie Schaer is, and at all times relevant to this action has been, a

resident of Chicopee, Massachusetts and a citizen of Massachusetts.  In or about May 2021, Ms.

Schaer purchased one Mr. Coffee Easy Measure 12-Cup Programmable Coffee Maker from a

Walmart store located at 591 Memorial Dr, Chicopee, MA 01020.  Ms. Schaer purchased the

Product, reasonably believing its warranty complied with state and federal law and believing that

she would have the ability to repair the product if it malfunctioned and/or modify the product

with functioning parts if she so desired.  However, the Product Ms. Schaer purchased did not

comply with state and federal law because of the unlawful repair restriction attached to the

warranty which prohibited her from repairing or modifying the Product.  Ms. Schaer would not

have purchased the Product, or would have paid significantly less for the Product, had she known

that the Product did not comply with state and federal law.  The unlawful repair restriction

attached to her warranty was only made reasonably apparent to her after purchasing the product

and opening the packaging at home.  The warranty for the Product that Ms. Schaer purchased can

be found at page 8 of the attached **Exhibit 1**, which does not contain the warranty language

itself, but rather points to the warranty language at the following website:

https://www.mrcoffee.com/on/demandware.store/Sites-mrcoffee-Site/default/Support-

Show?cfid=warranty-faq.

4.      The Product that Ms. Schaer purchased began to slightly malfunction shortly after

she purchased it.  Specifically, the filter inside her Product stopped working correctly.  By

performing minor disassembly of the Product in an attempt to fix the issue, Ms. Schaer voided

the warranty coverage of her product, according to the language found in Defendants' warranty.

Ms. Schaer did not want to send in the product for repair because she would have had to pay

postage and mailing fees out of pocket to ship the Product to an authorized repair center or

would have been forced to make a long drive (at her own expense) to carry in her product to an

authorized service center.  Additionally, she would be deprived of the use of the product for

which she paid during the duration of any transport and repair.

5.      Ms. Schaer reviewed the Product's packaging prior to purchase.  Ms. Schaer

relied on the packaging in making her purchase decision.  Defendants disclosed on the packaging

that the Product included a one-year limited warranty but did not disclose that the warranty

included an unlawful repair restriction.  Had there been a disclosure, Ms. Schaer would not have

purchased the Product because the unlawful repair restriction would have been material to her, or

at the very least, she would have purchased the Product at a substantially reduced price.

6.      Defendant Newell Brands Inc. is a Delaware corporation with its principal place

of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328.  Defendant Newell

Brands Inc. markets and distributes the Products throughout the United States.  Defendant

Newell Brands Inc. sells its products to consumers on websites and retail stores nationwide.

7.      Defendant Sunbeam Products, Inc. is a Delaware corporation with its principal place of business at 2381 Executive Center Drive, Boca Raton, Florida 33431.  Defendant Sunbeam Products, Inc. markets and distributes the Products throughout the United States. Defendant Sunbeam Products, Inc. sells its products to consumers on websites and retail stores nationwide.  Defendant Sunbeam Products, Inc. is a wholly owned subsidiary of Defendant Newell Brands Inc.

8.      Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

10.      This Court has personal jurisdiction over both Defendants because Defendants conduct substantial business within this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased her Product and suffered her resulting injury in this District.

## COMMON FACTUAL ALLEGATIONS

### I.  Defendants' Business Activities

12.     Defendants distribute consumer products to retailers throughout the United States, who then sell the appliances to consumers.

13.     Defendants' products and brands include Sunbeam, Crockpot, Oster, and Mr. Coffee, among others.

14.     All the relevant products include the same unlawful tying arrangement in their warranties.

15.     Defendants have advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

16.     Defendants' Products include a "written warranty" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

17.     The length of the limited warranty offered by Defendants is one year.

18.     Defendants' limited warranty includes the aforementioned unlawful tying arrangement.

### II.  The Defendants Condition Warranty Coverage On Unlawful Repair Restrictions

19.     In numerous instances, Defendants, through their warranty statements for various appliances, condition warranty coverage on the usage of Defendants' repair services to perform maintenance and repair work, rather than allowing consumers to repair or modify the product themselves or take them to a third-party repair service.

20.     Specifically, Defendants' warranty states "Sunbeam Products, Inc, at its option, will repair or replace this product or any component of the product found to be defective during

5

the warranty period … Do NOT attempt to repair or adjust any electrical or mechanical functions on this product.  Doing so will void this warranty."[1]

21.     Under the terms of the warranty, it is Defendants' "option" to "repair or replace this product or any component of the product found to be defective during the warranty period."[2] Thus, Defendants are not obligated to provide first party repair service and parts free of charge.

22.     Furthermore, the warranty states "Dealers, service centers, or retail stores selling Sunbeam Products, Inc products do not have the right to alter, modify or any way change the terms and conditions of this warranty."[3]

23.     Under the terms of the warranty, purchasers are bound to only use authorized repair services and are completely prohibited from modifying their products with non-authorized parts.

24.     Furthermore, Defendants do not even reasonably inform customers where such authorized repair centers can be found.  No list of authorized repair centers appears on Defendants' website nor on the warranty agreement itself.

25.     Defendants do however inform purchasers how to obtain authorized parts. Purchasers are directed to https://www.ereplacementparts.com/coffee-parts-c-116130.html, where purchasers may purchase authorized parts at a price premium.  There is no option on this website to obtain free parts for Products that are still under warranty.

26.     Defendants' policy is that if a purchaser wants to repair their Product under the warranty, they are required to get their Product to an authorized repair center at their own

---

[1] https://www.mrcoffee.com/on/demandware.store/Sites-mrcoffee-Site/default/Support-Show?cfid=warranty-faq.
[2] *Id.*

[3] *Id.*

expense.  Purchasers are thus responsible for the cost of shipping, packing the Product, and insurance, if desired.  Defendants do not consider themselves responsible for loss or damage to this Product in shipping.

27.     Thus, under the terms of the warranty, purchasers who elect to take advantage of Defendants' warranty must at the very least pay postage and mailing fees, which can be substantial considering the size and weight of a coffee machine.  For example, such shipping charges can in fact easily cost approximately half the cost of a new coffee machine.

28.     Additionally, such purchasers would not be able to use the Product that they purchased for the duration of the transport and repair.

29.     Under their warranty, Defendants in effect provide parts in a manner which impedes or precludes the choice by the consumer to perform necessary labor to install such parts.

30.     Defendants' policies, which are not reasonably disclosed to consumers, demonstrate that their ostensible free repair service is a sham meant to encourage purchasers to replace their Products instead of repair products still under warranty.

31.     By conditioning their warranty in this manner, Defendants have violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning warranties on the consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

32.     Defendants' practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

**III.    The Magnuson-Moss Warranty Act**

33.     The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes.  It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

34.     Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

35.     An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Defendants' warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)).  For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty.  These provisions violate the Act in two ways.  First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c)

**IV.     Section 5 Of The Federal Trade Commission Act**

36.     The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[4]

37.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actions or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.  *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

38.     The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs.  In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[5]

39.     The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action.

---

[4] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

[5] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

40.    The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[6]

41.    The FTC has also expressed concern that repair restrictions "may place a greater financial burden on communities of color and lower-income Americans."[7]

42.    While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[8]

43.    Here there is no justification for Defendants' repair restrictions since the technology inside many of Defendants' Products (such as their drip coffee machines) are well known and simple, and the repair restriction is not relevant as any consideration of personal injury or improper repairs.

44.    Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against repair restrictions that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[9]

## CLASS REPRESENTATION ALLEGATIONS

45.    Plaintiff seeks to represent a class defined as all purchasers of Sunbeam, Crockpot, Oster, or Mr. Coffee products in the United States with warranty provisions that

---

[6] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.
[7] *Id.* at 5.

[8] *Id.* at 10.

[9] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

prohibit self-repair and/or the use of unauthorized parts (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

46.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the relevant products in the Commonwealth of Massachusetts with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Massachusetts Subclass") (collectively with the Class, the "Classes").

47.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

48.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Massachusetts Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the millions. Given the size of the Defendants' operations and the number of retail stores in the United States selling Defendants' Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

49.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

(a)     Whether Defendants misrepresented and/or failed to disclose
        material facts concerning the Products;

(b)     whether Defendants' conduct was unfair and/or deceptive;

(c)     whether Defendants have been unjustly enriched as a result of
        the unlawful conduct alleged in this Complaint such that it would

be inequitable for Defendants to retain the benefits conferred

upon Defendants by Plaintiff and the Classes;

(d)     whether Plaintiff and the Classes sustained damages with respect

to the common law claims asserted, and if so, the proper measure

of their damages;

(e)     whether Defendants' conduct violates the Magnuson-Moss

Warranty Act; and

(f)     whether Defendants' conduct violates section 5 of the Federal

Trade Commission Act.

50.     Plaintiff's claims are typical of those of the Classes because Plaintiff, like all

members of the Classes, purchased, in a typical consumer setting, Defendants' Products, and

Plaintiff sustained damages on account of Defendants' wrongful conduct.

51.     Plaintiff will fairly and adequately protect the interests of the Classes and has

retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests

which conflict with those of the Classes.

52.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, especially given the potentially low individual damages suffered

by individual class members.

53.     The prosecution of separate actions by members of the Classes would create a risk

of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.

For example, one court might enjoin Defendants from performing the challenged acts, whereas

another might not.  In addition, individual actions could be dispositive of the interests of the

Classes even where certain Class or Subclass Members are not parties to such actions.

<u>COUNT I</u>
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***

54.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

above.

55.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Classes against Defendants.

56.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

57.     Plaintiff and the Class and Subclass Members are consumers as defined in 15

U.S.C. § 2301(3).

58.     Defendants are suppliers and warrantors as defined by the Warranty Act because

they are suppliers or other persons who give or offer to give a written warranty or who are or

may be obligated under an implied warranty.  15 U.S.C. § 2301(4) and (5).

59.     No warrantor may condition the continued validity of a warranty on the use of

only authorized repair service and/or authorized replacement parts for non-warranty service and

maintenance (other than an article of service provided without charge under the warranty or

unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C.

2302(c)). 16 CFR § 700.10(c).

60.     In connection with the marketing and sale of the Product, Defendants have

conditioned a warranty on the consumer's using, in connection with the warranted Product, with

the use of only an authorized repair service and/or authorized replacement parts. 16 CFR §

700.10(c).

61.     Specifically, Defendants state "Sunbeam Products, Inc, at its option, will repair or

replace this product or any component of the product found to be defective during the warranty

period ….  Do NOT attempt to repair or adjust any electrical or mechanical functions on this product.  Doing so will void this warranty."

62.    Defendants also violate the Magnuson Moss Warranty Act by requiring that any installation of parts on Defendants' products be performed by "Sunbeam Products, Inc or an authorized Sunbeam Products, Inc service center."

63.    By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass Members.

64.    Plaintiff and the Class and Subclass Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they had known the truth about the deceptive nature of the Products or would have paid substantially less for them.

## COUNT II
## Unjust Enrichment

65.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

66.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

67.    Plaintiff and members of the Classes conferred benefits on Defendants by purchasing the Product.

68.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the

Products contained an unlawful repair restriction until after the point of sale.  These omissions caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the product.

69.     Retention of those moneys also is unjust and inequitable because, as alleged above, Defendants include an unlawful repair restriction on their Products that is not disclosed until after the point of sale.

70.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

## COUNT III
**Fraud**

71.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

72.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

73.     As discussed above, Defendants provided Plaintiff and members of the Classes with false or misleading material information about the Products.

74.     Specifically, Defendants indicated to Plaintiff and members of the Classes that they would be unable repair the products that they had just purchased.  Defendants added this provision knowingly in order to encourage Plaintiff and members of the Classes to purchase new Products and/or replacement parts at inflated prices rather than repair older Products or purchase cheaper or more effective third-party parts.

75.     Defendants misrepresented that these unlawful repair restrictions were binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

76.     Defendants exacerbated these misrepresentations because the unlawful repair restrictions were not revealed to Plaintiff and members of the classes until after the point of sale.

77.     These misrepresentations were made with knowledge of their falsehood.

78.     The misrepresentations made by Defendants, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the product than they would have.

79.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

<u>**COUNT IV**</u>
**Fraudulent Omission**

80.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

82.     This claim is based on fraudulent omissions concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties.  As discussed above, Defendants failed to disclose that the Products included a restriction that ostensibly prevented Plaintiff and members of the class from repairing their products themselves until after the point of sale.

83.     The false and misleading omissions were made with knowledge of their falsehood.  Defendants manufacture, market, and sell consumer electronics nationwide and know that the FTC has stated that repair restrictions of the type that appears on Defendants' warranty are unlawful.  Nonetheless, Defendants continued to include their unlawful repair restrictions on their Products and continue to fail to reveal such restrictions to consumers until after the point of sale.

84.      The false and misleading omissions were made by Defendants, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Products than they otherwise would have.

85.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
### Violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A *et seq.*

86.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

87.     Plaintiff brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendants.

88.     Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."  An act is "deceptive" under Chapter 93A "if it could

reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

89.     It is "the intent of the legislature that in construing" whether an act is deceptive under 93A § 2, "the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." *See* Mass. Gen. Laws Ann. ch. 93A, § 2.

90.     An act or practice is a violation of MUDBPA if it "violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." 940 CMR 3.16.

91.     Section 9 provides: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

92.     Pursuant to the definitions codified at Chapter 93A § 1, Defendants are "persons," and Defendants are engaged in "trade" and "commerce" in Massachusetts by offering for sale Products that directly or indirectly affect the people of Massachusetts.

93.     By engaging in the acts and omissions alleged above and incorporated herein, Defendants have engaged and continue to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

94.     Defendants' misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

95.     Defendants' acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

96.     Defendants have also committed a violation of MUDBPA predicated on their violations of FTC regulations – specifically, their violation of Section 5 of the FTC Act as interpreted by the Federal Trade commission.

97.     Defendants have also committed a violation of MUDBPA predicated on its violation of the Magnuson-Moss Warranty Act, which is a federal consumer protection statute within the purview of M.G.L. c. 93A, § 2.

98.     Plaintiff and members of the Massachusetts Subclass reasonably relied upon and were deceived by Defendants' warranty policies.

99.     Defendants knowingly mispresented that the Products' warranties complied with Federal and Massachusetts law.

100.    Had Plaintiff and Massachusetts Subclass members known that the Products' warranty included an unlawful repair restriction, they would either not have purchased the Products, or would have paid less for them.

101.    Plaintiff and the Massachusetts Subclass Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they knew the truth about the deceptive nature of the Products or would have paid substantially less for them.

102.    Plaintiff and members of the Massachusetts Subclass have been harmed by this

injury, adverse consequence, and/or loss.

103.    The MUDBPA represents a fundamental public policy of the Commonwealth of Massachusetts.

104.    For each loss, Plaintiff and each member of the Massachusetts Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

105.    Because Defendants acted willfully or knowingly, Plaintiff and each member of the Massachusetts Subclass may recover up to three but not less than two times this amount.  In addition, Plaintiff may recover attorneys' fees and costs.

106.    Plaintiff and the members of the Massachusetts Subclass may also seek the imposition of an injunction relief which limits and polices Defendants' representations within or reaching Massachusetts.  The balance of the equities favors the entry of permanent injunctive relief against Defendants.   Plaintiff, members of the Massachusetts Subclass, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendants.  Plaintiff, members of the Massachusetts Subclass, and the general public lack an adequate remedy at law.  A permanent injunction against Defendants is in the public interest.  Defendants' unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

107.    In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on January 28, 2022, Plaintiff's counsel served Defendants with written notice of its violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter is attached hereto as **Exhibit 2**.  Defendants did not make a written tender of settlement for the putative class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

(a)  For an order certifying the nationwide Class and Massachusetts

Subclass under Rule 23 of the Federal Rules of Civil Procedure and

naming Plaintiff as representative of the Class and Massachusetts

Subclass and Plaintiff's attorneys as Class Counsel to represent the

Class and Massachusetts Subclass Members;

(b)  For an order declaring the Defendants' conduct violates the statutes

referenced herein;

(c)  For an order finding in favor of Plaintiff, the nationwide Class, and

the Massachusetts Subclass on all counts asserted herein;

(d)  For compensatory and punitive damages in amounts to be

determined by the Court and/or jury;

(e)  An award of statutory penalties to the extent available;

(f)  For pre-judgment interest on all amounts awarded;

(g)  For an order of restitution and all other forms of monetary relief; and

(h)  For an order awarding Plaintiff, the Class, and Massachusetts

Subclass their reasonable attorneys' fees and expenses and costs of

suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so

triable.

21

Dated:  April 8, 2022                          Respectfully submitted,

                                               **REARDON SCANLON LLP**

                                               By: */s/ James J. Reardon, Jr.*
                                                       James J. Reardon, Jr.

                                               James J. Reardon, Jr.
                                               45 South Main Street, 3rd Floor
                                               West Hartford, CT  06107
                                               Telephone: (860) 955-9455
                                               Facsimile:  (860) 920-5242
                                               Email:  james.reardon@reardonscanlon.com

                                               **BURSOR & FISHER, P.A.**
                                               Julian C. Diamond (*Pro Hac Vice*)
                                               888 Seventh Avenue, Third Floor
                                               New York, NY 10019
                                               Telephone: (646) 837-7011
                                               Facsimile:  (212) 989-9163
                                               Email: jdiamond@bursor.com

                                               **BURSOR & FISHER, P.A.**
                                               Neal Deckant (*Pro Hac Vice forthcoming*)
                                               1990 North California Blvd., Suite 940
                                               Walnut Creek, CA  94596
                                               Telephone: (925) 300-4455
                                               Facsimile: (925) 407-2700
                                               Email: ndeckant@bursor.com

                                               *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2022, a true and correct copy of the forgoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.


Dated: April 8, 2022                          _/s/ James J. Reardon, Jr._
                                              James J. Reardon, Jr.